UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT RUSSELL, individually,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JOSEPH SAMEC, individually; SEAN BISHOP, individually; and JOHN DOES 1-10,<br><br>　　　　Defendants. | Case No.:<br><br>COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF |

## I.　INTRODUCTION

Plaintiff, Robert Russell ("Russell"), by and through his attorneys of record, Buchalter, a Professional Corporation, bring this action for defamation, outrage, tortious interference with business expectancies, false light, and injunctive relief against Joseph Samec, Sean Bishop, and John Does 1-10 (sometimes collectively the "Defendants") who participated, assisted or encouraged the unlawful defamatory, tortious and outrageous conduct.

## II.　PARTIES

1.　Robert Russell is an individual who resides in King County, Washington.

2.　Joseph Samec is an individual who resides in Covina, California.

3.　Sean Bishop is an individual who, upon information and belief, resides in Port Orange, Florida.

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS
INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 1
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

4. John Does 1-10 ("Does") are individuals and/or entities that have made and/or aided in making defamatory statements about Russell.

### III. JURISDICTION AND VENUE

5. This Court has original jurisdiction over the case under 28 U.S.C. § 1332(a) (1), because the amount in controversy exceeds $75,000, and Russell and Defendants are citizens of different states.

6. Venue is proper in the Federal District Court for the Western District of Washington because Defendants knowingly targeted and caused harm to Washington residents with defamatory statements, some of which Defendants designed to interfere with Russell's business relationships in Washington, Florida, and throughout the country.

### IV. STATEMENT OF FACTS

7. Robert Russell, through hard work, has built and maintained successful businesses throughout the country. Unfortunately, his success (and often his generosity) has made him a target of opportunists and fraudsters.

8. In 2013, Russell, who won his license in the cannabis lottery, started SMRB, LLC, a cannabis grower and distributor located outside of Anacortes, in Skagit County, Washington. SMRB's license allowed it to build up to a 10,000 square foot facility. Russell initially built a 5,000 square foot facility, which cost them about $1,500,000.

9. In 2014, Russell was introduced to Guy Griffithe ("Griffithe"). At the time, Russell was considering whether to expand his cannabis operation by building out the second 5,000 square feet that the license allowed him to do. Griffithe sought out Russell and asked him if his company, Renewable Technologies Solution, Inc. ("RTSI"), could investment money to build out the second half of the facility in exchange for a share of profits. This deal made sense for Russell because he could use the money to build the second building, as he had personally financed all the costs of building out and operating the initial phase.

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 2
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

10. On July 8, 2015, Russell and Griffithe memorialized their agreement in the Dividend Interest Agreement. Russell agreed to give RTSI 49% of SMRB's net proceeds in exchange for RTSI contributing $1,500,000 to Russell. Russell and RTSI are the only parties to the Dividend Interest Agreement (and Griffithe is the sole owner of RTSI). Importantly, although Russell understood Griffithe might raise some of the funds from a small group of third party investors, Russell made clear in the Dividend Interest Agreement (and to Griffithe) that he *only* had an obligation to RTSI and had nothing to do with other investors.

11. As part of the Dividend Interest Agreement, Griffithe gave Russell $1,400,000, which Russell then used to build out his remaining 5,000 square feet as permitted by the license. Neil Beaton, a well-known and well-regarded expert witness in forensic accounting and valuations, has reviewed Russell's personal and business tax and bank records, and confirmed that Russell spent more than $1,500,000 to build out the first 5,000 square feet of the facility. Russell believes his initial personal investment was well in excess of $1,500,000. Mr. Beaton also confirmed that Russell received no direct investor money and only received about $1,400,000 from Griffithe. Mr. Beaton also confirms that the total that was spent to build out the entire 10,000 square feet was $3,000,000. As a result, it is clear that all the money that was received from Griffithe went exactly where it was supposed to go – into the second 5,000 square foot build out. There is no evidence that Russell ever received any money from any individual investor, other than Griffithe.

12. Russell has since learned that Griffithe, without his knowledge or approval, raised millions of dollars from third party investors. And Russell only learned about this issue when a few of these third parties contacted, or started contacting him. He told each of them the same thing – he had never heard of them, had not signed any agreement with them, and did not know what they were talking about.

13. Having received a few documents that the third parties suggest were signed by Russell, a court certified expert has testified the signatures were either "forged" or "digitally

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 3
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

edited" (meaning a signature was copied and then re-inserted into a signature line). One example of "digital editing" appears in the signature that Samec has provided to various parties. On other documents, Russell's name is signed with only one "l" instead of two "lls." The bottom line is the third party investor documents that do contain a Russell signature were forged.

14. Griffithe's conduct has understandably upset and harmed these investors, but any anger towards Russell is misplaced. Indeed, Russell lost no less than $2,000,000 and likely more than $2,500,000 related to Griffithe's conduct – not an act that individuals in a Ponzi scheme engage in. They steal others money to fund a lifestyle and then steal others to pay back the first they stole from. Nothing of its kind happened in this case, at least as far as it applies to Russell.[1]

15. Yet, despite the fact that Russell never met or agreed to do business with him, one of Griffithe's investors, Joseph Samec, blames Russell for his losses. Unable to separate fact from conspiracy, Samec's understandable frustration towards Griffithe has turned to scorched earth attack on Russell. Samec has published numerous outrageous and false claims about Russell, including that he:

- is under FBI/DOJ investigation;
- stole more than eight million dollars of investors' money;
- illegally sold securities;
- created fraudulent contracts to cheat investors; and
- Many other far more egregious things that simply will not be stated, except under seal, as no republishing of the same will take place in this complaint.

---

[1] On their face, Joseph Samec's false statements that Russell masterminded a Ponzi scheme to screw over investors makes no sense. Of course, the underlying principal of a Ponzi scheme is steal money from the first investor while at the same time paying back the first investors with later investors' money. No such evidence as it relates to Russell exists.

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 4
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

16. These statements are lies designed solely to humiliate Russell and hurt his business interests.

17. And Samec's depravity is not limited to slander and defamation—he has also cruelly displayed Russell's face in lewd scenes in a sexist and homophobic manner. For example, he edited a photograph of Russell's face onto a lewd scene depicting several naked men, and then published it on the internet with a homophobic comment for all to see. In another example, Samec edited and published a picture of what appears to be testicles onto a picture of Russell's head. Some of Samec's other publications are too appalling and outrageous to detail further in these pleadings.

18. Defendants conspired to humiliate Russell and hurt his business interests. Upon information and belief, Samec enlisted Sean Bishop in his campaign to destroy Russell's reputation. Bishop, a former friend who had a falling out with Russell, readily bought into the scheme as a way to retaliate against Russell. To that end, acting in concert with Samec, Bishop also posted some of the same lewd images that Samec had previously posted, including lewd and homophobic depictions of Russell with naked men. Bishop also published false statements on social media, claiming that Russell:

- is under FBI/DOJ investigation;
- stole millions of dollars of investors' money;
- illegally sold securities;
- created fraudulent contracts to cheat investors;
- was arrested for "stock fraud"; and
- Many other far more egregious things that simply will not be stated, except under seal, as no republishing of the same will take place in this complaint.

19. These statements are lies designed to humiliate Russell and hurt his business interests.

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 5
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

20. In addition to trying to humiliate Russell, Defendants also decided to attempt to hurt Russell's business interests. Russell has discovered at least three instances where Defendants have intentionally tried to interfere with Russell's business relationships resulting in the loss of millions of dollars.

21. Samec, for example, complained to the Washington State Liquor and Cannabis Board ("LCB") that Russell stole his money in a Ponzi scheme. LCB then conducted a thorough and lengthy investigation, in which it determined that Russell had not engaged in a Ponzi scheme. Although LCB found no Ponzi scheme, it determined that Russell paid his company's bills with his personal money. This ultimately resulted in Russell being forced to shut down his cannabis business. Admittedly, Russell did pay his company's rent with his personal funds, but he did so to try to save his cannabis business, and save his own money and that of the other investors. Had Samec not made numerous and false claims about Russell to LCB, his cannabis business would still be operating today, with a prospect of returning some money to Griffithe, who of course would be required to pass all such funds onto the third party investors.

22. Defendants also interfered with Russell's attempt to secure investors to develop mineral rights in a Washington property. Upon information and belief, Defendants directly contacted some of these investors and slandered Russell by claiming he stole money from investors and other similar libel. They did this solely to hurt Russell's business interests. Because of Defendants' intentional interference, the New York investors pulled out of the deal and Russell lost the multi-million dollars investment.

23. Finally, Bishop sought to convince prospective customers to avoid Russell's Florida entertainment club by falsely claiming that Russell had stolen money from a disabled individual and would steal his customers' money, too.

24. Upon information and belief, John Does 1-10 are other individuals and/or entities that have either actively engaged in, or encouraged, the slander of Russell by Samec and Bishop.

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 6
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

## V. CAUSES OF ACTION

**A.   Defendants defamed Russell.**

25.   Russell re-alleges and incorporates by reference the preceding paragraphs.

26.   Defendants published false and defamatory statement about Russell to third parties, including but not limited to the false claims that Russell is under FBI/DOJ investigation, stole millions of dollars of investors' money, illegally sold securities, created fraudulent contracts to cheat investors, and was arrested for "stock fraud."

27.   John Does 1-10 are also potentially liable for the lies and false statements made by Samec and Bishop by engaging in, or encouraging, their use of the false statements.

28.   The lies and false statements made by Samec and Bishop and encouraged by others, are not privileged.

29.   Defendants are liable for their lies and false statements made to others and have caused extensive damages to Russell.

**B.   Defendants' despicable conduct towards Russell constitutes outrage.**

30.   Russell re-alleges and incorporates by reference the preceding paragraphs.

31.   Defendants falsely claimed that Russell is under FBI/DOJ investigation, stole millions of dollars of investors' money, illegally sold securities, created fraudulent contracts to cheat investors, and was arrested for "stock fraud" were made for purposes of harming Russell.

32.   Defendants also edited lewd photographs to include Russell's face and included sexist and homophonic references to Russell. Defendants' extreme and outrageous conduct was made solely for purposes of intentionally inflicting emotional distress on Russell. Indeed, Defendants' conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS
INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 7
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

civilized community." *Corey v. Pierce Cty.*, 154 Wash. App. 752, 763, 225 P.3d 367, 374 (2010).

33. Defendants' decision to publish false and outrageous statements and lewd, sexist, and homophobic photographs has resulted in severe emotional distress and mental anguish to Russell.

**C.     Defendants intentionally interfered in Russell's business relationships.**

34. Russell re-alleges and incorporates by reference the preceding paragraphs.

35. Defendants knew that Russell owned and wanted to develop mineral rights on the Washington property.

36. Defendants knew that Russell was discussing a multi-million dollar investment with individuals from New York.

37. Defendants intentionally interfered in Russell's business relationship with the New York Investors by directly contacting them and making false statements about Russell solely for purposes of destroying his business relationship with these individuals.

38. Because of Defendants' intentional interference, the New York investors pulled out of the deal and Russell lost the multi-million dollar investment.

39. Likewise, Samec knew about Russell's cannabis business and intentional contacted the LCB for purposes of accusing Russell of running a Ponzi scheme.

40. Samec's conduct resulted in the eventually in the closing of Russell's cannabis business.

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 8
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

41. Bishop also sought to convince prospective customers to avoid Russell's Florida entertainment club by claiming that Russell had stolen money from a disabled individual and would steal his customers' money, too.

42. Defendants' tortious interference with Russell's business has proximately caused injuries and damages to Russell in an amount to be determined at trial.

**D.  Defendants intentionally portrayed Russell in a false light.**

43. Russell re-alleges and incorporates by reference the preceding paragraphs.

44. Defendants have published false information to intentionally place Russell in a false light.

45. Defendants falsely claimed that Russell is under FBI/DOJ investigation, stole millions of dollars of investors' money, illegally sold securities, created fraudulent contracts to cheat investors, and was arrested for "stock fraud" were made for purposes of harming Russell.

46. Defendants also edited lewd photographs to include Russell's face and included sexist and homophonic references to Russell. Defendants' extreme and outrageous conduct was made solely for purposes of intentionally inflicting emotional distress on Russell.

47. Defendants' defamatory statements and lewd depictions of Russell would be highly offensive to a reasonable person.

48. Defendants knew or recklessly disregarded the falsity of these publications despite the fact that they knew it would paint Russell in a false light.

**E.  Defendants' dishonest conduct entitles Russell to Injunctive Relief.**

49. Russell re-alleges and incorporates by reference the preceding paragraphs.

50. Russell has a clear legal right to operate his business without lies and false statements being made about it.

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 9
CASE NO.:

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052

51. Upon information and belief, Defendants continue to lie and make false statements about Russell.

52. Russell has a real and justified fear that the continuing lies and false statements being said about him will continue to hurt both his future business opportunities as well as his existing businesses.

53. Damages are not an adequate remedy at law and, therefore, Russell asks that this court enter preliminary and final relief enjoining Defendants from continuing to lie and make false statements about Russell.

## VI.  PRAYER FOR RELIEF

WHEREFORE, having fully plead, Russell prays for the following relief:

1. For Judgment against Samec in an amount to be determined at trial for the damages caused by his lies and/or false and unprivileged statements;

2. For Judgment against Bishop in an amount to be determined at trial for the damages caused by his lies and/or false and unprivileged statements;

3. For Judgment against John Does 1-10 in an amount to be determined at trial, for their actual false and unprivileged statements, or encouragement of the same;

4. For preliminary and permanent injunctive relief enjoining the Defendants from continuing to lie and make false and unprivileged statements about Russell;

5. An order requiring Defendants to remove and/or retract from any social media or similar platform any and all defamatory statements about Russell;

6. For attorneys' fees and costs as permitted by common law or statute; and

7. For such other or further relief as this Court deems just and equitable.

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 10
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

| | | |
|---|---|---|
| Dated: February 20, 2020 | | BUCHALTER |

By: *s/Brad P. Thoreson*

By: *s/Teva F. Sempel*
Brad P. Thoreson, WSBA #18190
Teva F. Sempel, WSBA#54896
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052
Email: bthoreson@buchalter.com
Email: tsempel@buchalter.com

*Attorneys for Plaintiff Robert Russell*

BN 39532360v1

COMPLAINT FOR DEFAMATION, OUTRAGE, TORTIOUS INTERFERENCE, FALSE LIGHT, AND INJUNCTIVE RELIEF - 11
CASE NO.:

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052