HONORABLE J. RICHARD CREATURA

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT RUSSELL, individually,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH SAMEC, individually; SEAN BISHOP, individually; and JOHN DOES 1-10,<br><br>Defendants. | Case No. 2:20-cv-00263-RSM-JRC<br><br>**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC**<br><br>**NOTED ON MOTION CALENDAR:**<br>**June 5, 2020** |

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. FACTS GIVING RISE TO INJUNCTIVE RELIEF ............................................. 1

    A. Russell Invests in SMRB and Meets Guy Griffithe ................................. 1

    B. The Guy Griffithe Scheme ........................................................................ 2

    C. Defendants Samec and Bishop Publish Outrageous and Offensive Material about Russell ............................................................................. 3

    D. Defendants Have Caused Russell Emotional Distress and Mental Suffering .................................................................................................... 4

    E. Relevant Procedural Background ............................................................ 5

III. THE COURT SHOULD ISSUE AN INJUNCTION TO STOP SAMEC'S OFFENSIVE AND OUTRAGEOUS PUBLICATIONS AGAINST RUSSELL ........ 6

    A. Legal Standard for the Issuance of a Preliminary Injunction .............. 6

    B. Russell will Likely Prevail on the Merits of His Claims ....................... 6

        1. Samec's Publications are Extreme, Outrageous, and Intentionally Designed to Hurt Russell ......................................... 7

        2. Samec Intentionally Portrayed Russell in a False Light ............. 9

    C. Russell will Continue to Suffer Irreparable Harm Absent Immediate Injunctive Relief ..................................................................................... 10

    D. The Balance of the Hardships Clearly Favors Russell's Request for Injunctive Relief ..................................................................................... 11

    E. The Public Interest is Advanced by Granting Injunctive Relief ........ 12

IV. CONCLUSION .................................................................................................... 13

PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - i
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ............................................................................................. 6

*Am. Motorcyclist Ass'n v. Watt,*
714 F.2d 962 (9th Cir. 1983) ........................................................................................... 6, 7

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.,*
750 F.2d 1470 (9th Cir. 1985) ........................................................................................... 11

*Amazon.com, Inc. v. Moyer,*
417 F. Supp. 3d 1388 (W.D. Wash. 2019) ......................................................................... 6

*Arizona Dream Act Coal. v. Brewer,*
757 F.3d 1053 (9th Cir. 2014) ........................................................................................... 11

*City & Cty. of San Francisco v. United States Citizenship & Immigration Servs.,*
944 F.3d 773 (9th Cir. 2019) ............................................................................................. 11

*Cohen v. Google, Inc.,*
887 N.Y.S.2d 424 (N.Y. Sup. Ct. 2009) ........................................................................... 11

*Contreras v. Crown Zellerbach Corp.,*
88 Wn.2d 735 (1977) .......................................................................................................... 7

*Corey v. Pierce Cty.,*
154 Wn. App. 752 (2010) ................................................................................................... 7

*Crane v. Indiana High Sch. Athletic Ass'n,*
975 F.2d 1315 (7th Cir. 1992) ........................................................................................... 11

*CytoSport, Inc. v. Vital Pharms., Inc.,*
617 F. Supp. 2d 1051 (E.D. Cal. 2009) ............................................................................ 11

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
661 F.2d 328 (5th Cir. 1981) ............................................................................................. 11

*Eastwood v. Cascade Broad. Co.,*
106 Wn.2d 466 (1986) ........................................................................................................ 9

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - ii**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

*Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.*,
   250 F.3d 1234 (9th Cir. 2001) ............................................................................. 6

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ................................................................................... 12, 13

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007) .................................................................................. 10

*Grimsby v. Samson*,
   85 Wn.2d 52 (1975) (plurality opinion) ............................................................ 7, 8

*Hairston v. Pac.-10 Conference*,
   893 F. Supp. 1485 (W.D. Wash. 1994), *aff'd*, 101 F.3d 1315 (9th Cir.
   1996), *as amended* (Dec. 19, 1996) .................................................................. 11

*Harris v. City of Seattle*,
   315 F. Supp. 2d 1105 (W.D. Wash. 2004), *aff'd,* 152 Fed. Appx. 565 (9th
   Cir. 2005) ............................................................................................................ 9

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988) ............................................................................................ 12

*Kloepfel v.. Bokor*,
   149 Wn.2d 192, 66 P.3d 630 (2003) ................................................................ 7, 8

*Lucas v. Bechtel Corp.*,
   800 F.2d 839 (9th Cir. 1986) ............................................................................. 11

*Marlyn Nutraceuticals, Inc. v. Muco Pharma Gmbh & Co.*,
   571 F.3d 873 (9th Cir. 2009) ............................................................................. 10

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) .............................................................................................. 12

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ............................................................................................ 6

*Pavilon v. Kaferly*,
   204 Ill.App.3d 235 (1990) ................................................................................ 7, 8

*Pete v. Tacoma Sch. Dist. No. 10*,
   198 F. Supp. 3d 1206 (W.D. Wash. 2016) .......................................................... 9

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - iii**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

*Phillips v. World Pub. Co.*,
822 F. Supp. 2d 1114 (W.D. Wash. 2011) ........ 7

*Potlongo v. Herff Jones, LLC*,
749 Fed. Appx. 537 (9th Cir. 2018) ........ 10

*Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*,
747 F.2d 511 (9th Cir. 1984) ........ 11

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991) ........ 10

*Reyes v. Yakima Health Dist.*,
191 Wn.2d 79 (2018) ........ 8

*Robel v. Roundup Corp.*,
148 Wn.2d 35, 59 P.3d 611 (2002) ........ 7

*Rosenblatt v. Baer*,
383 U.S. 75 (1966)(concurring opinion) ........ 12

*Snyder v. Phelps*,
562 U.S. 443 (2011) ........ 12

*Sutton v. Tacoma Sch. Dist. No. 10*,
180 Wn. App. 859 (2014) ........ 7, 8

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........ 10

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

## I. INTRODUCTION

When an individual continues to publish offensive and outrageous material about another person that is intended to damage, harass, and cause emotional distress, a court can and should intervene. That is the case here.

For more than a year, Defendant Joseph Samec has personally attacked Plaintiff Robert Russell by posting offensive and threatening material about him on various social media platforms (e.g., Facebook, Instagram). Samec has published numerous fake and digitally - edited photographs depicting Russell in a criminal setting or in lewd images, including homophobic depictions of Russell naked with other men. Samec published the material out of a personal vendetta against Russell to interfere with his relationships and to damage Russell's emotional well-being. This behavior cannot continue.

Because there is a likelihood Russell will prevail on his false light and outrage claims against Samec, and the balance of harm clearly favors it, an injunction should be issued. Therefore, Russell respectfully requests that the Court grant the motion and enjoin Samec from continuing to publish and republishing the offending material.

## II. FACTS GIVING RISE TO INJUNCTIVE RELIEF

### A. Russell Invests in SMRB and Meets Guy Griffithe

Plaintiff Robert Russell lives in King County, Washington.[1] In 2013, Russell won a license in the cannabis lottery and shortly thereafter started SMRB, LLC, a cannabis grower and distributor located outside of Anacortes, in Skagit County, Washington.[2] SMRB's license allowed it to build up to a 10,000 square foot facility, and Russell initially built a 5,000 square foot facility, costing about $1,500,000.[3]

In 2014, Russell was introduced to Guy Griffithe.[4] At the time, Russell was considering

---

[1] Declaration of Robert Russell filed in support on his motion for preliminary injunction ("Russell Dec."), ¶2.
[2] *Id.* at ¶3.
[3] *Ibid.*
[4] *Id.* at ¶4.

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 1**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

whether to expand his cannabis operation by building out the second 5,000 square feet that the license allowed him to do.[5] Griffithe approached Russell about whether Griffithe's company, Renewable Technologies Solution, Inc. ("RTSI"), could investment money to build out the second half of the SMRB's facility in exchange for a share of profits. Russell later agreed to accept Griffithe's proposition.[6]

As part of their agreement, Griffithe gave Russell $1,400,000, which he then used to build out the remaining 5,000 square feet of the SMRB facility.[7] The cost to build out the entire facility was $3,000,000, and more than $1,500,000 of these funds came from Russell personally.[8]

## B.   The Guy Griffithe Scheme

Without Russell's knowledge or approval, Griffithe raised millions of dollars from third party investors by promising them a share of the profits from the cannabis business.[9] As part of his scheme, Russell's signature was either forged or digitally-edited on documents with investors.[10] Russell did not know about Griffithe's investor agreements, and he certainly did not agree to them. He never met with anyone about investing, nor signed any agreements with these investors.[11]

Russell first learned about Griffithe's scheme after third parties began contacting him.[12] Russell told each of the investors the same thing – he had never heard of them, had not signed any

---

[5] Russell Dec. at ¶4.

[6] *Ibid.* On July 8, 2015, Russell and Griffith executed a Dividend Interest Agreement whereby Russell agreed to give RTSI 49% of SMRB's net proceeds in exchange for RTSI contributing $1,500,000 to Russell. Russell and RTSI are the only parties to the Dividend Interest Agreement (and Griffithe is the sole owner of RTSI). Russell Dec. at ¶5.

[7] Russell Dec. at ¶5.

[8] *Ibid.*

[9] *Id.* at ¶6.

[10] A court certified expert has testified that the third party investor documents that do contain a Russell signature were either "forged" or "digitally edited" (meaning a signature was copied and then re-inserted into a signature line). One example of "digital editing" appears in the signature that Samec has provided to various parties. On other documents, Russell's name is signed with only one "l" instead of two "lls." The bottom line is the third party investor documents that do contain a Russell signature were forged.

[11] Russell Dec. at ¶7.

[12] *Id.* at ¶8.

PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 2
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

agreement with them, and had no information about their dealings with Griffithe.[13] Indeed, Russell himself lost no less than $2 million and more likely $2.5 million related to Griffithe's conduct.[14]

On January 21, 2020, the Securities and Exchange Commission (the "SEC") brought a civil suit against Griffithe, Russell, and others in connection with the RTSI investments.[15] While the SEC has alleged that Griffithe and RTSI operated a Ponzi scheme, there are no such allegations against Russell.[16] Russell has not been charged with any criminal violation, and he denies all of the claims in the SEC Complaint in their entirety.[17]

### C. Defendants Samec and Bishop Publish Outrageous and Offensive Material about Russell

Defendant Joseph Samec is a California resident and one of the investors who allegedly lost money from Griffithe's scheme. Although Russell has never met Samec or had any business dealings with him, Samec claims that Russell owes him money.[18] Indeed, Samec admits Russell personally told him that "he had not signed any agreement with him."[19]

In 2018, Samec met Defendant Sean Bishop, a Florida resident and former friend of Russell. Samec and Bishop presumably bonded over their mutual dislike of Russell, and together agreed to attack Russell's reputation by posting about him on various social media platforms (e.g., Facebook, Instagram).[20]

As early as mid-2018, Defendants Samec and Bishop began publishing offensive and outrageous statements about Russell. As part of their agreement, Samec created at least two

---

[13] Russell Dec. at ¶18.
[14] *Ibid.*
[15] *SEC v. Griffithe, et al.*, United States District Court, Central District of California, Case No. 8:20-CV-00124-DOC-JDE; Russell Decl., ¶18, Ex. 13.
[16] Russell Dec., ¶19, Ex. 14.
[17] *Id.* at ¶¶18-19, Exs. 13-14.
[18] *Id.* at ¶10
[19] *Ibid.*
[20] *Id.* at ¶11-12.

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 3**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

fake Facebook accounts under the guises of "Ben Thieven" and "Dave Snothere."[21] These fictitious accounts have the exact same IP address as Samec's Facebook account, all of which originate from Samec's home in Covina, California.[22] Samec used these fake accounts to boost the spread of misinformation and anonymously attack Russell.

For over a year, Samec has published numerous fake and digitally edited photographs depicting Russell in a criminal setting or in lewd images, including homophobic depictions of Russell naked with other men.[23] The following is a summary of the outrageous and offensive material Samec has published regarding Russell, which images are attached to the concurrently filed Declaration of Robert Russell as Exhibits 1 through 12:

- Digitally-edited nude depictions of Russell;[24]
- Digitally-edited photos of Russell with captions that he stole money;[25]
- Images of Russell with affirmative statements that Russell engaged in Ponzi schemes and/or committed crimes (e.g., larceny, embezzlement);[26] and
- Image of Russell with caption that he is under investigation by the FBI and Department of Justice.[27]

Russell has made it very clear that such statements are outrageous, offensive, and total fabrications.[28]

**D.   Defendants Have Caused Russell Emotional Distress and Mental Suffering**

Since Defendants began publishing this false and offensive information about him, Russell's friends and acquaintances have approached Russell to ask about the outrageous

---

[21] Declaration of Chris Adams filed in support of motion for preliminary injunction ("Adams Dec."), ¶¶4-8, Ex. 1.
[22] Adams Dec., ¶5-8, Ex. 1.
[23] Russell Dec., ¶¶12-13, Exs. 1-12.
[24] *Id.* at Exs. 1-2.
[25] *Id.*, at Exs. 3-5.
[26] *Id.*, at Exs. 6-11
[27] *Id.*, at Ex. 12.
[28] *Id.* at ¶¶19-20.

PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 4
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

depictions and allegations against him.[29] These individuals either saw the publications on social media, or heard about them directly from Defendants.[30] Some have expressed anger towards Russell, and he has lost friends over the allegations.[31] These interactions have humiliated, embarrassed, and angered Russell, who now suffers from insomnia, stress, dejection, anxiety, and a decreased appetite.[32]

Russell also feels unsafe in his own community due to Samec's publications, which have stirred up anger and resentment toward Russell.[33] Indeed, Samec has repeatedly encouraged others to share his posts on social media to purportedly rile up public resentment of Russell.[34] Samec has even advocated for physical violence against Russell.[35]

### E.  Relevant Procedural Background

On February 20, 2020, Russell filed the instant complaint against Defendants Joseph Samec and Sean Bishop for publishing false material and outrageous depictions of him, and interfering in Russell's ability to do business (the "Complaint"). Among other things, the Complaint alleges that Russell has sustained damages to his personal reputation, severe emotional distress, and ability to do business.[36]

On March 10, 2020, Samec filed an answer to the Complaint.[37] Defendant Sean Bishop failed to file a timely responsive pleading, and on March 30, 2020, this Court entered a default against Bishop.[38]

Because Samec has published and continues to publish outrageous and offensive material about Russell causing irreparable harm, Plaintiff filed the instant motion seeking

---

[29] Russell Dec. at ¶15.
[30] *Ibid.*
[31] *Ibid.*
[32] *Id.* at ¶¶15, 17.
[33] *Id.*
[34] *See Id.* at Exs. 5-7.
[35] *See e.g., Id.* at Exs. 5.
[36] *See* Dkt. # 1.
[37] *See* Dkt. # 9.
[38] Dkt. # 13.

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 5**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

Case 2:20-cv-00263-RSM-JRC   Document 24   Filed 05/14/20   Page 11 of 19

injunctive relief. Specifically, Russell requests that the Court issue an injunction enjoining Samec from continuing to publish or republishing the material attached to the Russell Declaration as Exhibits 1 through 12, including any material substantially similar to the foregoing exhibits.[39]

### III. THE COURT SHOULD ISSUE AN INJUNCTION TO STOP SAMEC'S OFFENSIVE AND OUTRAGEOUS PUBLICATIONS AGAINST RUSSELL

#### A. Legal Standard for the Issuance of a Preliminary Injunction

In considering a motion for preliminary injunction, the court evaluates four factors. Russell must establish (1) a likelihood of success, (2) that he will suffer irreparable harm absent injunctive relief, (3) that the balance of equities tilts in his favor, and (4) injunctive relief is in the public interest.[40]

The Ninth Circuit employs a "sliding scale" when analyzing whether to grant a preliminary injunction.[41] Under this approach, courts balance these four elements "so that a stronger showing of one element may offset a weaker showing of another."[42] These factors weigh heavily in Russell's favor.

#### B. Russell will Likely Prevail on the Merits of His Claims[43]

To prevail on a motion for a preliminary injunction, the moving party must show a likelihood of success on the merits.[44] The sliding scale approach requires a plaintiff to show probable success where he can only show a possibility of irreparable injury.[45] On the other

---

[39] Because a default has been entered against Bishop, by way of this motion, Russell only seeks injunctive relief against Samec.
[40] *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).
[41] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Amazon.com, Inc. v. Moyer*, 417 F. Supp. 3d 1388, 1395 (W.D. Wash. 2019).
[42] *Cottrell*, 632 F.3d at 1131. So a party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor. *Id.* at 1135.
[43] Because this case is based on diversity jurisdiction, this Court should apply Washington state law regarding Russell's claims. *See Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001).
[44] *Cottrell*, 632 F.3d at 1135.
[45] *Am. Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 965 (9th Cir. 1983).

PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 6
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

hand, the plaintiff need only meet a lesser standard – showing "serious questions are raised – where the balance of hardships tips sharply in his favor.[46]

Here, Russell will succeed on the merits of these claims, as the evidence demonstrates that Samec has published outrageous and offensive material about Russell.

### 1. Samec's Publications are Extreme, Outrageous, and Intentionally Designed to Hurt Russell

To prevail on a claim of outrage, Russell must show (1) extreme or outrageous conduct by Samec, (2) intentional or reckless infliction of emotional distress, and (3) that he suffered severe emotional distress.[47] All three elements are satisfied here.

#### a. Samec's Conduct is Extreme and Outrageous

Samec's conduct, intended to harass and intimidate Russell, would lead an average member of the community to deem the conduct to be outrageous.[48]

A defendant will be liable for outrage when his conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[49] In *Contreras v. Crown Zellerbach Corp.*, the Washington Supreme Court held that bigoted behavior is outrageous, noting that such statements may not be looked upon as "mere insulting language."[50] Courts have also found that publically accusing someone of a crime is outrageous,[51] as well as physical threats of violence.[52]

---

[46] *Watt*, 714 F.2d at 965.
[47] *Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011)(citing *Robel v. Roundup Corp.*, 148 Wn.2d 35, 51, 59 P.3d 611, 619 (2002).
[48] *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 870 (2014).
[49] *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975) (plurality opinion).
[50] *Contreras v. Crown Zellerbach Corp.*, 88 Wn.2d 735, 741–42 (1977) (emphasis added).
[51] *See Corey v. Pierce Cty.*, 154 Wn. App. 752, 764-765 (2010) (upholding jury verdict against defendant for publically accusing the plaintiff of criminal behavior despite knowledge that an internal investigation revealed little of substance).
[52] *See, e.g., Kloepfel v. Bokor*, 149 Wn.2d 192, 194–95, 66 P.3d 630 (2003) (elements of outrage met when defendant threatened to kill his ex-girlfriend, watched her home, and called her home, work, and friend numerous times); *Pavilon v. Kaferly*, 204 Ill.App.3d 235 (1990) (employer's requests for dates and sexual favors, alleged threats to kill and rape plaintiff, and unsolicited letters to plaintiff's parents and psychotherapist were sufficient

PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 7
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

Samec's publications are outrageous for all these reasons. Samec published digitally edited photographs depicting Russell without clothing and in lewd settings.[53] He falsely claimed Russell committed crimes and has incited harm against him.[54] A cursory review of these publications would lead any average person to deem them extreme and outrageous. Indeed, these publications go beyond mere insulting language – they go beyond all possible bounds of decency. They are atrocious and utterly intolerable in a civilized community."[55]

### b. Samec Intentionally Inflicted Emotion Distress Against Russell

It is evident that Samec acted intentionally when he published these statements and pictures.[56] The publications were taken directly from Samec's social media accounts, and he urged people to share his posts. The intent can only be to inflict emotional distress.

As a result, Russell has sustained severe emotional distress due to Samec's behavior.[57] The Washington Supreme Court has held that emotional distress includes all unpleasant mental reactions, including humiliation and embarrassment.[58] A showing of bodily harm is not required to establish outrage.[59] Courts presume a party has suffered severe emotional distress if the party shows intentional or reckless outrageous conduct.[60]

Here, since Samec intentionally published the outrageous information, Russell is entitled to a presumption of emotional distress. Russell has been humiliated, embarrassed, and even ostracized from his community. Russell's friends and acquaintances have seen these

---

basis for outrage claim).

[53] Russell Dec., ¶12, Exs. 1-12.

[54] *Ibid.*

[55] *See Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 91 (2018) ("The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, utterly intolerable in a civilized community.'")(quoting *Grimsby*, 85 Wash.2d at 59).

[56] "Outrage requires that the defendant either intended to cause emotional distress or recklessly caused such distress." *Sutton*, 180 Wn. App. at 871.

[57] *See* Russell Dec., ¶¶15-17.

[58] *Kloepfel*, 149 Wn.2d at 197–98 (2003) ("Emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.").

[59] *Id.* (a "showing of bodily harm is not necessary" to prove outrage) (quoting *Grimsby*, 85 Wn.2d at 59).

[60] *Id.* ("Once [intent and outrageous conduct] have been shown, it can be fairly presumed that severe emotional distress was suffered.").

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 8**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

publications on social media, and have approached Russell about the depictions and the allegations against him. Others have unfairly expressed anger towards Russell, apparently believing Samec's publications about him. Russell has lost friendships and business relationships. Samec's conduct has caused Russell to suffer from insomnia, anxiety, stress, and other emotional damage.[61]

A reasonable person would certainly find the false criminal accusations, threats of violence, and obscene depictions of Russell to be extreme and outrageous. Accordingly, Russell respectfully requests that the Court enjoin Samec from continuing to publish the offensive material.

### 2. Samec Intentionally Portrayed Russell in a False Light

To prevail on his false light claim, Russell must show: (1) Samec's publications have placed him in a false light, (2) the publications would be offensive to a reasonable person, and (3) Samec knew of or recklessly disregarded the falsity of his publication.[62]

Moreover, "[a] plaintiff need not be defamed to bring a false light action."[63] Indeed, as the Washington Supreme Court provides: "[i]t is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."[64] A false light cause of action compensates a plaintiff for mental suffering in connection with the offensive publication.[65]

All of these elements are easily satisfied here. Samec intentionally published material that portrayed Russell in a false light. In addition to publishing the digitally-edited lewd images

---

[61] Russell Dec., ¶¶15-17.
[62] *Harris v. City of Seattle*, 315 F. Supp. 2d 1105, 1109 (W.D. Wash. 2004), *aff'd*, 152 Fed. Appx. 565 (9th Cir. 2005)("A defendant will be liable for the tort of placing the plaintiff in a false light if the false light would be highly offensive to a reasonable person and the defendant "knew of or recklessly disregarded the falsity of the publication and the false light in which the [plaintiff] would be placed."); *Pete v. Tacoma Sch. Dist. No. 10*, 198 F. Supp. 3d 1206, 1214 (W.D. Wash. 2016)( "A false light claim arises when a defendant (1) publicizes a matter that places another in a false light, (2) the false light would be highly offensive to a reasonable person, and (3) the defendant knew of or recklessly disregarded its falsity.").
[63] *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 471 (1986).
[64] *Ibid.*
[65] *Ibid.*

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 9**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

1  of Russell, Samec also made affirmative false statements that Russell stole money, engaged in Ponzi schemes, committed crimes (e.g., larceny, embezzlement), and is under investigation by the FBI and Department of Justice.[66] Samec knowingly spread false publications that would be offensive to a reasonable person

Based on the evidence, Samec has no valid defense to Russell's false light claims. As such, Russell requests that the Court grant the motion to enjoin Samec's conduct.

## C. Russell will Continue to Suffer Irreparable Harm Absent Immediate Injunctive Relief

To satisfy the irreparable-injury requirement, Russell must show "that he is likely to suffer irreparable harm in the absence of preliminary relief."[67] In the Ninth Circuit, a showing of compelling evidence that a plaintiff will likely prevail on the merits also establishes a likelihood that he will suffer irreparable injury absent an injunction.[68] Courts consider the following two elements: (1) a plaintiff will likely suffer an imminent injury, and (2) the injury would be irreparable.[69]

That is precisely the type of harm Russell faces here. First, Russell will suffer an imminent injury. An injury is imminent if it will likely occur before the court resolves the merits.[70] Samec has and will continue to publish defamatory and outrageous information about Russell. As long as these publications remain public for all to see, the injury is ongoing.

Second, Russell continues to suffer irreparable harm. An injury is irreparable if monetary damages cannot completely prevent or rectify it[71] or if there is no adequate remedy

---

[66] *See* Russell Dec., Exs 1-12; Adams Dec., ¶¶4-8.
[67] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).
[68] *See Marlyn Nutraceuticals, Inc. v. Muco Pharma Gmbh & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (district court "reasonably presumed irreparable injury" for preliminary injunction where plaintiff in trademark infringement case established a likelihood of success on the merits).
[69] *See Winter*, 555 U.S. at 22; *see also, Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).
[70] *Ibid.*
[71] *See, e.g., Potlongo v. Herff Jones, LLC*, 749 Fed. Appx. 537, 538 (9th Cir. 2018)(no irreparable harm because an award of money damages can compensate it); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)("It is true that economic injury alone does not support a finding of irreparable

PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 10
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

at law.[72] Here, monetary damages will not rectify the harm to Russell, and the emotional and relational damages are difficult to quantify. Russell has and continues to suffer emotional distress due to Samec's ongoing onslaught of offensive and outrageous material.[73] And, even if Russell prevails and receives a money judgment, he would need to assert new claims each time Samec publishes additional material.

Moreover, the defamatory and outrageous publications are ongoing. Online statements can do remarkable damage with very little effort on the part of the speaker, which makes the statements here even more harmful.[74] Because of the nature of Samec's conduct, there is no adequate remedy at law. Thus, imminent and irreparable harm has been established.

### D. The Balance of the Hardships Clearly Favors Russell's Request for Injunctive Relief

In balancing the equities, the Ninth Circuit "consider[s] the hardships each party is likely to suffer if the other prevails."[75] Here, preventing Samec from publishing offensive and outrageous material about Russell will cause him no harm whatsoever. An injunction would not affect any legitimate conduct and prevent him from engaging in lawful conduct.[76]

---

harm, because such injury can be remedied by a damage award."); *Lucas v. Bechtel Corp.*, 800 F.2d 839, 847 (9th Cir. 1986)("Monetary damages are not usually sufficient to establish irreparable harm.")(quoting *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473–74 (9th Cir. 1985); *Hairston v. Pac.-10 Conference*, 893 F. Supp. 1485, 1493 (W.D. Wash. 1994), *aff'd*, 101 F.3d 1315 (9th Cir. 1996), *as amended* (Dec. 19, 1996) ("Allegations of monetary damages alone will not suffice for a showing of irreparable harm."); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)(irreparable injury is harm that cannot be undone by award of monetary damages).

[72] *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)("Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages."); *see also, Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315, 1326 (7th Cir. 1992)(injunction requires plaintiff to show of no other adequate legal remedy).

[73] *Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 520 (9th Cir. 1984) (crediting intangible harms such as the "the dissipation of alumni and community goodwill and support garnered over the years").

[74] *Cohen v. Google, Inc.*, 887 N.Y.S.2d 424, 428 (N.Y. Sup. Ct. 2009) ("Internet provides a virtually unlimited, inexpensive, and almost immediate means of communications with tens, if not hundreds, of millions of people, the dangers of its misuse cannot be ignored.").

[75] *City & Cty. of San Francisco v. United States Citizenship & Immigration Servs.*, 944 F.3d 773, 806 (9th Cir. 2019).

[76] *See CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) (concluding that balance of equities supported temporary relief because "the requested injunction does not preclude [defendant] from engaging in its normal business activities, including manufacturing, promoting and selling a competing . . . product.

PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 11
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

...

On the other hand, the hardship to Russell strongly favors injunctive relief. Besides the devastating impact on his reputation and his relationships with family and friends, Samec's publications is affecting Russell's psyche and emotional well-being. The injury is ongoing and Russell has no way other than injunctive relief to stop Samec. Russell has troubling sleeping, eating, and relaxing. Such hardships prevail over any minimal burden to Samec.

Furthermore, Russell has no other options. As mentioned above, Russell's only alternative is to file a new suit for each defamatory publication, which would not serve the public interest and would waste this Court's valuable time and resources. And while Russell cannot un-ring the bell, he is confident an injunction will mitigate future harm and give him something meaningful to rely upon when responding to personal inquiries regarding Samec's Publications.

### E. The Public Interest is Advanced by Granting Injunctive Relief

Enjoining Samec's outrageous and offensive conduct serves the public interest. While the public has an interest in free speech, this interest is not impacted by enjoining Samec's illicit behavior. Furthermore, the Supreme Court has held that First Amendment protections are less rigorous in a private matter like this.[77] With "fake news" on the rise, the public certainly has a prevailing interest in preventing the publication of false information.[78] The public also has a vital interest in ensuring an individual's right to be protected against a campaign of offensive and false information.[79]

Indeed, the Supreme Court has stated that false statements have little social value and a

---

Rather, the injunction only asks that [defendant] refrain from using a mark and trade dress for its products which is confusingly similar to [plaintiff's] trademark and trade dress.").

[77] *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)("Not all speech is of equal First Amendment importance, however, and where matters of purely private significance are at issue, First Amendment protections are often less rigorous.")(citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988)).

[78] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974)("The legitimate state interest underlying the law of libel is the compensation of individuals for the harm inflicted on them by defamatory falsehood.").

[79] *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) ("The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty.")(quoting *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966)(concurring opinion)).

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 12**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

defamed individual's right to recovery trumps the defamer's First Amendment right:

> [T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues. They belong to that category of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.[80]

Samec's publications have no social value. They are designed to humiliate and harass, and to destroy all aspects of his life. This Court should not allow such conduct to continue.

## IV. CONCLUSION

Washington law does not allow Samec to publish outrageous and offensive information about Russell. These illicit publications have irreparably damaged Russell's psyche and caused extreme emotional distress. If this Court does not enjoin Samec now, he will continue his personal vendetta against Russell. Simply put, Russell has no other options. Because there is a likelihood Russell will prevail on his false light and outrage claims against Samec, and because the balance of harm clearly favors it, the Court should issue an injunction enjoining Samec from continuing to publish and republishing the offending material about him.

Dated: May 14, 2020

BUCHALTER
A Professional Corporation

By: /s/ Bradley P. Thoreson
Bradley P. Thoreson, WSBA #18190
Teva F. Sempel, WSBA #54896
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052
Email: bthoreson@buchalter.com
Email: tsempel@buchalter.com

*Attorneys for Plaintiff Robert Russell*

---

[80] *Gertz*, 418 U.S. at 340 (emphasis added)(internal citations omitted).

PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 13
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2020, I electronically filed the preceding document with the Clerk of the Court using the CM/ECF system, which will send notification to the counsel of record in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ *Marci L. Brandt*
Marci L. Brandt, Legal Assistant

BN 40391899v1

**PLAINTIFF ROBERT RUSSELL'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT JOSEPH SAMEC - 14**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052