HONORABLE J. RICHARD CREATURA

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT RUSSELL, individually, | Case No. 2:20-cv-00263-RSM-JRC |
| Plaintiff, | **PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S MOTION TO VACATE DEFAULT; AND ALTERNATE DEMAND FOR JURY TRIAL AND HEARING UPON DAMAGES** |
| v. | |
| JOSEPH SAMEC, individually; SEAN BISHOP, individually; and JOHN DOES 1-10, | |
| Defendants. | **NOTED ON MOTION CALENDAR: MAY 22, 2020** |

## I.      INTRODUCTION

Defendant Sean Bishop's Motion to Vacate Default ("Motion") should be denied. A default may be set aside only upon a showing of good cause. Bishop did not – and cannot – make the requisite factual showing of good cause, and as a result, the default should remain in place.

The thrust of Bishop's argument is that good cause exists to set aside the default because he filed a motion to dismiss. He does not dispute, however, that his untimely motion to dismiss was filed *after* his deadline to file a responsive pleading. The law is clear: the mere fact a party files a motion to dismiss does not excuse a defendant's obligation to timely respond to a complaint. Indeed, if a defendant "has received actual or constructive notice of the filing of the

action and failed to answer" his conduct is culpable. *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 690 (9th Cir. 1988).

Additionally, this Court should deny the Motion because Bishop fails to show he has a meritorious defense. Indeed, Bishop does not deny liability. Instead, he simply contests personal jurisdiction and the amount of damages in conclusory fashion. This is insufficient to vacate default. A defendant must present the court with specific facts that would constitute a defense – a general denial without supporting facts is not enough to justify vacating an entry of default. *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). Nor, has Bishop shown a lack of prejudice to Russell.

Accordingly, Plaintiff Robert Russell requests that the Court deny Bishop's motion.

## II.   STATEMENT OF FACTS

### A.   Russell Invests in SMRB and Meets Guy Griffithe

Plaintiff Robert Russell lives in King County, Washington. Declaration of Robert Russell ("Russell Decl."), ¶2. In 2013, Russell won a license in the cannabis lottery and shortly thereafter started SMRB, LLC, a cannabis grower and distributor located outside of Anacortes, in Skagit County, Washington. SMRB's license allowed it to build up to a 10,000 square foot facility, and Russell initially built a 5,000 square foot facility, costing about $1,500,000. Russell Decl., ¶3.

In 2014, Robert Russell was introduced to Guy Griffithe. At the time, Russell was considering whether to expand his cannabis operation by building out the second 5,000 square feet that the license allowed him to do. Griffithe approached Russell about whether Griffithe's company, Renewable Technologies Solution, Inc. ("RTSI"), could investment money to build out the second half of the SMRB's facility in exchange for a share of profits. Russell later agreed to accept Griffithe's proposition. Russell Decl., ¶4.

As part of their agreement, Griffithe gave Russell $1,400,000, which Russell then used to build out the remaining 5,000 square feet of the SMRB facility. The cost to build out the

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

entire facility was $3,000,000, and more than $1,500,000 of these funds came from Russell personally. Russell Decl., ¶5.

**B.      Russell had no Knowledge of Guy Griffithe's Scheme**

Without Russell's knowledge or approval, Griffithe raised millions of dollars from third party investors by promising them a share of the profits from the cannabis business. As part of his scheme, Russell's signature was either forged or digitally edited on documents with investors. Russell Decl., ¶6.

Russell first learned about Griffithe's scheme after third parties began contacting him. Russell told each of the investors the same thing – he had never heard of them, had not signed any agreement with them, and had no information about their dealings with Griffithe. Russell Decl., ¶7. Indeed, Russell himself lost no less than $2 million and more likely $2.5 million related to Griffithe's conduct. Russell Decl., ¶8.

On January 21, 2020, the Securities and Exchange Commission (the "SEC") brought a civil suit against Griffithe, Russell, and others in connection with the RTSI investments in the action entitled *SEC v. Guy Scott Griffithe, et al.* in United States District Court, Central District of California, Case No. 8:20-CV-00124-DOC-JDE. Russell Decl., ¶22. While the SEC has alleged that Griffithe and RTSI operated a Ponzi scheme, there are no such allegations against Russell. Russell has not been charged with any criminal violation, and he denies all of the claims in the SEC Complaint in their entirety. Russell Decl., ¶23.

**C.      Defendants Targeted Russell in Washington**

Defendant Joseph Samec is a California resident and one of the investors who allegedly lost money from Griffithe's scheme. Russell Decl., ¶9. Although Russell has never met Samec or had any business dealings with him, Samec blames Russell for his loses with Griffithe. Russell Decl., ¶10. Indeed, Samec admits Russell personally told him that he had not signed any agreement with him. *Ibid.*

PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S
MOTION TO VACATE DEFAULT- 3
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

In 2018, Samec met Defendant Sean Bishop, a Florida resident and former friend of Russell. For over a year, Defendants used both their personal social media accounts (e.g., Facebook, Instagram) to boost the spread of misinformation about Russell. Russell Decl., ¶11.

Specifically, Defendants published numerous fake and digitally edited photographs depicting Russell in a criminal setting or in lewd images, including homophobic depictions of Russell naked with other men. Russell Decl., ¶12. Many of the images contain affirmative statements that Russell engaged in Ponzi schemes, has committed crimes (e.g., larceny, embezzlement), and that he is under investigation by the FBI and Department of Justice. Many of these publications specifically reference that Russell lives in Washington. *Ibid*. Such statements are outrageous, offensive, and total fabrications. Russell Decl., ¶¶22-23.

**D.    Defendants Harmed Russell's Reputation, Psyche, and Businesses by Targeting Russell in Washington**

Since Defendants began publishing this false information, Russell's friends and associates in Washington have approached Russell to ask about the outrageous depictions and the allegations against him. Russell Decl., ¶¶15-16. These individuals either saw the publications on social media, or heard about them directly from Defendants. Some have expressed anger towards Russell, and he has lost friends over the allegations. These interactions have humiliated, embarrassed, and angered Russell, who now suffers from insomnia, stress, dejection, anxiety, and a decreased appetite. Russell Decl., ¶17.

In addition to his personal trauma, Defendants have also targeted many of Russell's Washington businesses in their publications claiming criminal conduct. Russell Decl., ¶¶18-21. Some of these publications specifically reference that Russell lives and does business in Washington. Other defamatory publications identify Russell's Washington businesses by name. The impact in Washington has been dramatic: employees and clients of Russell's businesses have contacted him to tell him they had heard about the allegations against him on social media or directly from Bishop. Russell Decl., ¶¶16, 18-21.

**PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S MOTION TO VACATE DEFAULT- 4**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

**E.     Procedural Background**

On February 20, 2020, Russell filed the Complaint against Defendants Samec and Bishop for publishing defamatory material and outrageous depictions of him, and interfering in Russell's ability to do business. [1] Dkt. # 1. Among other things, the Complaint alleges that Russell has sustained damages to his personal reputation, severe emotional distress, and ability to do business.

On February 25, 2020, Samec was served with the Summons and Complaint. Bishop was served with these pleadings on March 4, 2020. Dkt. # 11 at p. 1, ¶2.

On March 10, 2020, Samec filed an answer to the Complaint. Dkt. # 9. Bishop, however, did not timely respond to the Complaint within the 21 days provided by law. Dkt. # 13. As such, on March 30, 2020, this Court entered a default against Bishop, who "did not answer, appear, or defend within 21 days after being served with the Summons and Complaint." *Id*. at p. 1 That same day, Bishop filed a belated motion to dismiss claiming a lack of personal jurisdiction. Dkt. # 15.

On May 4, 2020, Russell responded to Bishop's personal jurisdiction argument. Dkt. # 19. In doing so, Russell specifically challenged Bishop's ability to bring such a motion because he had not shown the necessary good cause to set aside his default. *Id*. at p. 13.

On May 5, 2020, Bishop moved the Court to vacate entry of default against him. Dkt. # 21. Because Bishop has not carried his burden of demonstrating good cause to set aside the default, this Court should deny his Motion.

### III.     ARGUMENT

**A.     Legal Standard for Motion to Set Aside Entry of Default**

Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. Proc. 55(c). The "good cause" standard

---

[1] Russell sued for defamation, outrage, tortious interference with business expectancies, false light, and injunctive relief.

PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S
MOTION TO VACATE DEFAULT- 5
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b). See *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).

The good cause analysis considers three factors: (1) whether a defendant engaged in culpable conduct that led to the default; (2) whether a defendant has a meritorious defense; or (3) whether reopening the default judgment would prejudice the plaintiff. *Franchise Holding II, LLC v. Huntington Rests. Group, Inc*., 375 F.3d 922, 926 (9th Cir. 2004.) The defendant bears the burden of showing that these factors favor setting aside the default. Furthermore, the good analysis factors are disjunctive, and a court may deny the motion if any of the three factors is true. (*Ibid*.)

**B.    Bishop Has Not Set Forth Good Cause as to His Failure to Timely Respond to the Complaint**

The gravamen of Bishop's good cause argument is simple: entry of default should be vacated because he filed a motion to dismiss on the day that default was entered. Yet, the mere fact that a party files a motion to dismiss does not excuse a defendant's obligation to timely respond to a complaint. Indeed, if a defendant "has received actual or constructive notice of the filing of the action and failed to answer," his conduct is culpable. *Direct Mail Specialists, Inc., supra,* 840 F.2d at p. 690 (affirming court's refusal to vacate default judgment when defendant had until November 5th to respond and default was entered November 10th after the time that defendant had to answer); *Franchise Holding II, LLC*, *supra*, 375 F.3d at p. 926 (conduct is culpable when defendant knew of action and did not seek an extension of time for filing a responsive pleading).

Here, there is little doubt that Bishop consciously ignored the existence of this litigation and chose not to file a timely responsive pleading. On February 20, 2020, Russell filed the Complaint. Bishop was served with the Complaint and Summons on March 4th, and his responsive pleading was due 21 days later, on March 25th. Russell promptly requested entry of

PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S MOTION TO VACATE DEFAULT- 6
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

Bishop's default; and, ultimately, default was entered against Bishop on March 30th.

Moreover, Bishop provides no explanation why he failed to timely serve a responsive pleading. In fact, he admits that his motion to dismiss was filed late – the day default had already been entered (March 30th). Motion, at p. 2.

The facts and case law being such, Bishop cannot demonstrate the existence of good cause to set aside the entry of default where he deliberately chose to ignore his obligation to file a timely responsive pleading. Accordingly, Russell requests that the motion be denied.

**C.   Bishop Has Failed to Establish a Meritorious Defense**

To justify vacating entry of default judgment, a defendant must present the court with specific facts that would constitute a defense. *Franchise Holding II, LLC*, *supra*, 375 F.3d at p. 926; see *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969) (meritorious defense not shown when no supporting affidavits or documents were presented). Moreover, a "mere general denial without facts to support it" is not enough to justify vacating a default or default judgment. *Franchise Holding II, LLC*, 375 F.3d at p. 926.

Here, Bishop has not shown that he has a meritorious defense. Instead, he offers only conclusory statements without specific facts or evidentiary support.

1.   The Court has Personal Jurisdiction over Bishop

As set forth more fully in Russell's opposition to Bishop's motion to dismiss, this Court has specific personal jurisdiction over Bishop because he "purposefully directed" his tortious activity at Washington and this lawsuit arises out of those activities. Bishop provides no evidence to the contrary. Instead, he simply concludes that he has "no ties to Washington State and ha[s] taken no action which would subject [him] to the Court's jurisdiction." Motion, at p. 2. Such a statement is not enough to justify vacating default against him.

Russell, on the other hand, has presented evidence that the Court has specific personal jurisdiction over Bishop. See Russell Decl., ¶¶9-21. In the Ninth Circuit, a plaintiff satisfies the *Calder* intentional act element by showing that the defendant intentionally performed the

PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S
MOTION TO VACATE DEFAULT- 7
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

alleged acts, even if the defendant did not intend the result of his conduct.[2] In his motion, Bishop offers no evidence to dispute he made the publications, or that his actions were unintentional.

Furthermore, the Complaint makes clear that Bishop knew the effects of his tortious conduct would be felt in Washington. Bishop, because of his past friendship with Russell (and their mutual friends), knew exactly how to hurt Russell's ability to do business and reputation in Washington. He used this information to target Russell in Washington by contacting friends, associates, employees, clients, potential business partners, and Washington's cannabis regulatory agency both directly and through social media.  Russell Decl., ¶¶15-21. Just like in *Calder*, Bishop knew his publications would have a "devastating impact" on Russell in Washington, where Russell lives and works.

Lastly, Bishop knew his defamatory conduct would cause Russell harm in Washington. Specifically, Bishop knew Russell lived and worked in Washington and targeted his Washington businesses and relationships with defamatory information. *Ibid*. Although he claims this Court has no jurisdiction over him, Bishop does not dispute that he intended his conduct to injure Russell in Washington.

Defendants Joseph Samec and Sean Bishop have published offensive, defamatory, and outrageous material about Plaintiff Robert Russell – conduct all purposefully directed at a known Washington citizen, his Washington businesses, and his Washington relationships. Russell's claims against Bishop arise out of his tortious conduct targeted at Washington, and thus the Court has personal jurisdiction over Bishop.

2.   Bishop Has Conceded Liability

A key element in setting aside entry of default is the existence of a meritorious defense. *Franchise Holding II, LLC*, *supra*, 375 F.3d at p. 926. The party seeking relief from default has

---

[2] *Calder v. Jones*, 465 U.S. 783 (1984). In tort-based suits like here, the Ninth Circuit follows the Calder v. Jones "effects" test to determine if a party's purposeful directed activities towards the forum state. Under this test, a defendant "purposefully directed" activities towards the forum state if the defendant allegedly: (1) committed an intentional act; (2) expressly aimed at the forum state; and (3)causing harm that the defendant knows is likely to be suffered in the forum state. *Pakootas v. Teck Cominco Metals, Ltd*., 905 F.3d 565, 577 (9th Cir. 2018).

PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S
MOTION TO VACATE DEFAULT- 8
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

the burden of showing a defense that that might make the result at trial different. Failure to do so is grounds for denial of relief. *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (7th Cir. 2015) (defendant must present more than conclusory denials to show meritorious defense); *United States v. Aguilar*, 782 F.3d 1101 (9th Cir. 2015) (relief denied when there was no meritorious defense). Moreover, merely disputing the amount of damages is not sufficient to establish a defense. See *Bricklayers & Allied Craftworkers Local 2*, *supra*, 779 F.3d at p. 187.

Bishop woefully fails to meet his burden of offering evidence sufficient to establish a complete defense. In addition to his conclusory statements that the Court lacks personal jurisdiction, Bishop does not dispute liability. Namely, that he published defamatory material and outrageous depictions of Russell, and interfered in Russell's ability to do business. Instead, Bishop's contends that Russell cannot establish any damages. Motion, p. 2. As set forth in *Bricklayers & Allied Craftworkers Local 2*, however, simply disputing damages is not enough to raise a meritorious defense. (*Ibid*.)

To vacate entry of default, Bishop must demonstrate meritorious defense with underlying facts. He has not done so. Accordingly, Russell requests that the Court deny the Motion.

## D.    Bishop Has Not Shown Lack of Prejudice

If a plaintiff will suffer prejudice when the action is reopened, the court may deny the motion for relief. *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (danger of prejudice to non-defaulting party a "relevant circumstance" in determining whether relief granted.)

Here, Bishop has and will continue to publish defamatory and outrageous information about Russell. He does not deny culpability. As long as these publications remain public for all to see, Russell's injury is ongoing. Besides the devastating impact on his reputation and his relationships with family and friends, Bishop's publications are affecting Russell's psyche and

PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S
MOTION TO VACATE DEFAULT- 9
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

emotional well-being. The injury is ongoing and Russell has no way other than to have judgment entered against Bishop. Any further delay in doing so will exacerbate the harm to Russell.

**E.      Bishop is Not Entitled to a Jury Trial After Default Has Been Entered**

In the event that the Motion is denied, Bishop requests a "jury trial to hear all damages claims." Motion, p. 3. There is no legal basis for this request.

Rule 55(b)(2) provides that in cases where a clerk-entered default is not proper, a plaintiff must apply to the court to obtain a default judgment. In such a case, the court will then conduct a hearing or may rely on affidavits or declarations to determine the amount of damages. Fed. R. Civ. Proc. 55(b)(2); see *Bricklayers & Allied Craftworkers Local 2*, *supra*, 779 F.3d at p. 189. There is no authority, however, for a jury to determine the evidentiary issues. Indeed, the contrary is true. The right to a jury trial does *not* survive a default judgment. *Adriana Intl. Corp. v. Lewis & Co.*, 913 F.2d 1406, 1414 (9th Cir. 1990). As such, this Court should deny Bishop's request for a jury trial.

**IV.      CONCLUSION**

Bishop has not carried his burden of demonstrating good cause to set aside the default. Thus, Plaintiff Robert Russell respectfully requests that this Court deny Bishop's Motion to Vacate Default.

Dated:   May 20, 2020

BUCHALTER
A Professional Corporation


By:  /s/ Bradley P. Thoreson
Bradley P. Thoreson, WSBA #18190
Teva F. Sempel, WSBA #54896
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101-1337
Telephone: 206.319.7052
Email: bthoreson@buchalter.com
Email: tsempel@buchalter.com
*Attorneys for Plaintiff Robert Russell*

PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S MOTION TO VACATE DEFAULT- 10
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2020, I electronically filed the preceding document with the Clerk of the Court using the CM/ECF system, which will send notification to the counsel of record in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Marci L. Brandt
Marci L. Brandt, Legal Assistant

BN 40555007v1

**PLAINTIFF ROBERT RUSSELL'S OPPOSITION TO DEFENDANT SEAN BISHOP'S
MOTION TO VACATE DEFAULT- 11**
Case No. 2:20-cv-00263- RSM-JRC

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052