UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT RUSSELL,

        Plaintiff,

v.

JOSEPH SAMEC, *et al.*,

        Defendants.

CASE NO. 2:20-cv-00263-RSM-JRC

REPORT AND RECOMMENDATION

NOTED FOR: October 30, 2020

The District Court has referred this case to the undersigned. *See* Dkt. 12. The matter is before the Court on defendant Sean Bishop's motion to dismiss. *See* Dkt. 61.

Plaintiff sues defendants for defamation and other allegedly tortious conduct based on lewd images and misrepresentations that he claims defendants promulgated. Defendant Bishop, a Florida resident acting *pro se*, requests dismissal of the claims against him due to lack of personal jurisdiction. However, plaintiff has made a *prima facie* showing that the exercise of personal jurisdiction over defendant Bishop is appropriate, where plaintiff has gone beyond merely alleging that he was harmed in Washington State because he resides and has business interests here. Plaintiff claims that defendant Bishop reached out to Washington State media and

REPORT AND RECOMMENDATION - 1

contacted investors in plaintiff's Washington State project, and Bishop's purported defamation concerned an alleged fraudulent investment scheme involving plaintiff's Washington State business.

The motion to dismiss (Dkt. 61) should therefore be denied.

## BACKGROUND

Plaintiff, who lives in Washington, brought suit in February 2020, alleging that this Court had diversity jurisdiction over his state-law claims of defamation, outrage, false light, and intentional interference with business relationships against Joseph Samec and Bishop. *See* Dkt. 1.

In the operative complaint, briefly summarized, plaintiff alleges that Guy Griffithe—an investor in plaintiff's former Washington State marijuana distribution business—tricked third-party investors by telling them that they were investing in plaintiff's business. In reality, however, plaintiff claims that he was unaware that Griffithe was soliciting such funding and that "[t]here is no evidence that [plaintiff] ever received any money from any individual investor, other than Griffithe." *See* Dkt. 46, at 3–4. Defendant Samec is allegedly one of these third parties who was misled by Griffithe. Dkt. 46, at 4. Plaintiff claims that Samec believes that plaintiff was part of Griffithe's fraudulent investment scheme and that Samec, among other things, published "outrageous and false claims about" plaintiff. Dkt. 46, at 4.

Plaintiff asserts that defendant Bishop is a former friend of plaintiff's and that Samec "enlisted Sean Bishop in his campaign to destroy [plaintiff's] reputation." Dkt. 46, at 5. Plaintiff alleges that Bishop published false statements about plaintiff on social media (Dkt. 46, at 5) and "sought to convince prospective customers to avoid [plaintiff's] Florida entertainment club." Dkt. 46, at 6. Plaintiff also alleges that Bishop and Samec contacted prospective investors in plaintiff's attempted development of mineral rights in a Washington property and made

defamatory statements to them. Dkt. 46, at 6. Plaintiff alleges that as a result, the investors pulled out of the deal. Dkt. 46, at 6.

Defendant Bishop now moves for dismissal of the claims against him. *See* Dkt. 61. Plaintiff has responded (Dkt. 62), and the matter is ripe for decision.

## DISCUSSION

Plaintiff argues that there is no personal jurisdiction over him. *See* Dkt. 61, at 2. However, the Court finds that it has personal jurisdiction over defendant Bishop for the reasons discussed herein.

**I. Legal Standard**

To avoid dismissal on the basis of lack of personal jurisdiction, a plaintiff bears the burden of demonstrating that his allegations establish a *prima facie* showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in a plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

The exercise of personal jurisdiction over an out-of-state defendant must comport with constitutional due process. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985). "Washington's long-arm statute, section 4.28.185 of the Washington Revised Code, permits the exercise of jurisdiction to the full extent of the due process clause of the United States Constitution." *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004).

Under the due process analysis, a defendant may be subject to either "general" or "specific" personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 9 (1984). Like the parties, the undersigned focuses on whether specific

1   jurisdiction exists.  *See* Dkt. 62, at 8.

2   The specific jurisdiction analysis has three parts:

3   (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some
4   act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
5   (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
6   (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

7

8   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Where, as here,

9   the action sounds in tort, the first factor of the specific jurisdiction test focuses on "purposeful

10  direction":  whether defendant Bishop has purposefully directed activities at Washington State.

11  *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

12  The specific jurisdiction test "ensures that a defendant will not be haled into a jurisdiction

13  solely as a result of random, fortuitous, or attenuated contacts[.]"  *Burger King Corp.*, 471 U.S.

14  at 475 (internal quotation marks omitted).  "If any of the three requirements is not satisfied,

15  jurisdiction in the forum would deprive the defendant of due process of law."  *Omeluk v.*

16  *Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).  Plaintiff bears the burden to

17  establish the first two prongs.  *See Axiom*, 874 F.3d at 1068.

18  **II.  Purposeful Direction Analysis**

19  **A.  "Effects Test"**

20  Three general allegations in the amended complaint form the basis for the claims against

21  Bishop:  Bishop's publishing false statements about plaintiff on social media, Bishop's

22  convincing prospective customers to avoid plaintiff's Florida business, and Bishop's and

23  Samec's contacting prospective investors regarding plaintiff's attempt to develop mineral rights

24

REPORT AND RECOMMENDATION - 4

in a Washington property.  Because this case sounds in tort and involves actions outside the forum state, the Court applies the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984), to determine whether Bishop "purposefully directed" his actions to the forum state.  *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208–09 (9th Cir. 2020).

The *Calder* "effects test" requires that "'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"  *Id.* (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)).  The Court addresses these factors in turn.

### B.  Intentional Act

The first *Calder* factor is whether defendant committed an intentional act.  *See AMA Multimedia, LLC*, 970 F.3d at 1209.  For purposes of this analysis, a defendant acts intentionally when he acts with "'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'"  *Id.* (quoting *Schwarzenegger*, 374 F.3d at 806).

According to the allegations of the amended complaint, defendant Bishop performed intentional acts by posting (or re-posting) lewd images of plaintiff and various false statements about plaintiff, which were "lies designed to humiliate [plaintiff] and hurt his business interests." Dkt. 46, at 5.  Defendant Bishop also allegedly participated in contacting prospective New York investors in plaintiff's Washington project and allegedly contacted customers of plaintiff's Florida business.  Dkt. 46, at 6.  These allegations suffice as intentional actions under the first *Calder* factor.

### C.  Expressly Aimed at Washington State

The second *Calder* factor, and the focus of the parties' dispute, is whether defendant's

actions were expressly aimed at the forum state—here, Washington State. *See AMA Multimedia, LLC*, 970 F.3d at 1209.

In analyzing this issue, the undersigned looks to plaintiff's affidavit in support of his response to the motion to dismiss, in addition to the allegations of the amended complaint. A court may look to affidavits submitted related to a motion to dismiss for lack of personal jurisdiction. *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("When a defendant moves, prior to trial, to dismiss a complaint for lack of personal jurisdiction, the plaintiff must come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." (Internal citation omitted)).

Where, as here, the "motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc.*, 647 F.3d at 1223. "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). The Court notes that here, defendant Bishop has provided no affidavits or other documentary evidence contradicting plaintiff's affidavit.

**1. Overview of Case Law Regarding "Expressly Aimed At"**

The Court begins with an overview of the principles regarding when actions are "expressly aimed at" a forum state.

In *Calder* itself, an actor sued a Florida-based reporter and editor of a national newspaper for libel and other intentional torts. 465 U.S. at 785. The Supreme Court found that the "effects" of the reporter's and editor's conduct supported the exercise of personal jurisdiction over them. *Id.* at 789. The Court reasoned that the story—

> concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in

REPORT AND RECOMMENDATION - 6

> California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

*Calder*, 465 U.S. at 788–89; *see also Schwarzenegger*, 374 F.3d at 807 (discussing *Calder* and stating, "[t]he 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue. The reporter and editor in *Calder* were not accused of "untargeted negligence" that merely happened to cause harm to [plaintiff]. . . . Rather, their actions in writing and publishing a false and injurious article about [plaintiff's] alleged drinking problem constituted intentional behavior directed at [plaintiff] in California.").

To the extent that *Calder* may be read as supporting that merely knowingly targeting a resident of the forum state (who will thus suffer harm in the forum state) is adequate to confer personal jurisdiction, however, more recent case law has limited *Calder*. *Accord Amini v. Bezsheiko*, No. CV-19-02601-PHX-SMB, 2020 WL 1911212, at *5 (D. Ariz. Apr. 20, 2020) ("Simply put, the *Calder* defendants established minimum contacts in California beyond the mere fact that plaintiff happened to live there."). In 2014, in *Walden v. Fiore*, the Supreme Court concluded that the "crux" of *Calder* "was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." 571 U.S. 277, 287 (2014). "[T]he reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article *for publication in California that was read by a large number of California citizens*." *Id.* at 287–88 (emphasis added). The *Walden* court explained—

> In this way, the 'effects' caused by defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus,

1 | sufficed to authorize the California court's exercise of jurisdiction.

2 | *Id.* at 288.

3 | Further supporting that mere allegations that defendants targeted a plaintiff who resides in the forum state are inadequate to confer personal jurisdiction is the Ninth Circuit's application of *Calder* and *Walden* in *Morrill v. Scott Financial Corporation*. There, the Ninth Circuit concluded that an Arizona court did not have personal jurisdiction over an Arizona law firm's claims. The claims were against out-of-state defendants who had allegedly engaged in a campaign to harm the law firm for their role in litigation against defendants. *Morrill*, 873 F.3d 1136 (9th Cir. 2017). The alleged actions at issue included communications with plaintiffs in Arizona and civil actions filed in Arizona. *Id.* at 1143. Plaintiffs argued that, as Arizona residents, the reputational injury that occurred in Arizona sufficed to confer personal jurisdiction. *Id.* at 1144.

The Ninth Circuit disagreed. The Court concluded that the limited tortious conduct in Arizona arose out of and was a component of litigation in Nevada and that the links to Arizona occurred only because that happened to be where plaintiffs resided. *Id.* The Court held that—

> the potential foreseeability of some incidental harm to Plaintiffs in Arizona due to substantial litigation, without more, does not show that Defendants expressly targeted the forum state. 'Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections decisive in the jurisdictional analysis. It also obscures the reality that none of [the] challenged conduct had anything to do with [the forum state] itself.'"

*Id*. (quoting *Walden*, 134 S. Ct. at 1125); *see also Xcentric Ventures, LLC v. Bird*, 683 F. Supp. 2d 1068, 1073–75 (D. Ariz. 2010) (holding that mere knowledge of an individual's residence, combined with intentional posting of defamatory statements online does not amount to "express

1 aiming").

2 Bearing in mind that the Ninth Circuit and the Supreme Court have both cautioned
3 against the exercise of personal jurisdiction in a situation where the purported jurisdiction-
4 conferring actions were limited and ancillary to tortious conduct outside of the forum, the Court
5 turns to the allegations in this matter.

### 2. Analysis

Here, plaintiff has provided an uncontroverted affidavit that defendant Bishop posted comments on social media that were allegedly defamatory, that included references to plaintiff living in and doing business in Washington, and that identified plaintiff's Washington businesses by name. Dkt. 63, at 4. Plaintiff states that people—almost all of whom live in Washington—have contacted him because they saw the publications or heard about them directly from defendants Samec and Bishop. Dkt. 63, at 4. He states that defendants directly contacted Washington-based media companies. Dkt. 63, at 4. And plaintiff states—and alleges as the basis for one cause of action—that defendants contacted investors to intentionally interfere with plaintiff's attempt to secure funds to develop mineral rights in Washington. Dkt. 63, at 5. Moreover, the underlying dispute in this matter concerns whether or not plaintiff was part of a claimed fraudulent investment scheme that involved his Washington-based marijuana distribution company.

These allegations go well beyond the type of incidental, ancillary conduct in the forum state that was inadequate in *Morrill*. Bishop did not simply target plaintiff knowing that he was a Washington resident and that harm in Washington was likely to occur. And finding that personal jurisdiction exists in Washington is not tantamount to concluding that mere injury to plaintiff is a sufficient connection to Washington. *See Walden*, 571 U.S. at 290. Like the defendant in

1  *Calder*, Bishop—allegedly—took actions with a focal point in the forum state.

2  Defendant Bishop relies on *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011), which held that "posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)." Here, however, for the reasons noted above, the Court should find that defendant did something more than merely post allegedly defamatory statements on social media. *Schrader* is therefore inapposite.

3  Defendant Bishop also alleges that the complaint does not specify any particular harm directed toward the marijuana business, which could well have already been shut down by the time of Bishop's alleged statements. *See* Dkt. 61, at 5. Notably, however, plaintiff claims to have Washington business interests other than the former marijuana distribution company. *See* Dkt. 63, at 4. In the undersigned's view, it is the alleged targeting of plaintiff's reputation in Washington State by contacting Washington media outlets, identifying plaintiff's Washington businesses in certain postings, and targeting plaintiff's Washington investment project that confers personal jurisdiction.

4  Defendant Bishop argues that the New York investors could have pulled out from the mineral rights-development project for reasons other than any statements that defendant Bishop allegedly made. Dkt. 61, at 6. These speculative arguments are inadequate to controvert plaintiff's *prima facie* showing that Bishop and Samec caused the investors with withdraw by "directly contacting them and making false statements about [plaintiff] solely for purposes of destroying his business relationship with these individuals." Dkt. 46, at 8.

5  The undersigned notes that defendant Bishop is also being sued based on allegedly contacting customers of plaintiff's Florida "entertainment club." The undersigned is not

1 convinced that personal jurisdiction arises over this claim, which pertains to alleged actions
2 taken in Florida targeting a Florida business. Nonetheless, the District Court should exercise
3 pendent personal jurisdiction over the claims related to the Florida club. Such jurisdiction arises
4 "over a defendant with respect to a claim for which there is no independent basis of personal
5 jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the
6 same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl.
7 Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). The claims related to the Florida club
8 share the common nucleus of operative fact of being part of an alleged scheme by defendant
9 Bishop to cause damage to plaintiff's reputation and business interests due to his alleged
10 participation in defrauding Samec. Therefore, pendent personal jurisdiction exists with regard to
11 these claims.

### D. Causing Harm Defendant Knows Will Likely Be Suffered in Forum State

The third *Calder* factor is whether defendant Bishop knew that the harm would likely be suffered in Washington State. *See AMA Multimedia, LLC*, 970 F.3d at 1209. As noted above, according to plaintiff, Bishop took actions calculated to interfere with plaintiff's Washington property development project and to interfere with plaintiff's Washington businesses, including contacting Washington-based media companies. Plaintiff's claim is that it was, in fact, Bishop's intent to cause harm in Washington State, where plaintiff resided and had various business interests. The undersigned concludes that the third *Calder* factor has been met.

Thus, plaintiff has made a *prima facie* case that defendant Bishop purposefully directed his activities toward Washington State. The undersigned turns to the remaining two factors of the specific jurisdiction analysis—whether the claims arise out of or relate to the forum-related

activities and whether the exercise of jurisdiction comports with fair play and substantial justice.

### III. Arises Out of Forum-Related Activities

Defendant Bishop does not challenge whether plaintiff's claims arise out of the forum-related activities—the second factor of the specific jurisdiction inquiry. The Court concludes that the claims do so arise.

The Ninth Circuit "follows the 'but for' test": plaintiff "must show that he would not have suffered an injury 'but for' [defendant's] forum-related conduct." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Plaintiff asserts that "but-for" the alleged campaign of promulgating false statements about him, he would not have suffered emotional distress and anguish and that "but-for" defendants' contacting the New York investors, the investors would not have withdrawn from the mineral rights project. *See generally* Dkt. 46. These allegations are sufficient to make a *prima facie* case that plaintiff's claims arise out of the forum-related conduct.

### IV. Fair Play and Substantial Justice

Defendant Bishop asserts that exercise of personal jurisdiction over him "would not comport with fair play and social [sic] justice." Dkt. 61, at 7.

Because the first two prongs of the special jurisdiction inquiry are satisfied, the burden shifts to defendant Bishop to make "a compelling case" that specific jurisdiction would be unreasonable under a seven factor test set forth in *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). But defendant Bishop makes no argument under the applicable test.

The seven factors set forth in *Dole* are—

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

1 controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co.*, 303 F.3d at 1114.

The undersigned has already concluded that defendant Bishop allegedly directed his activities to Washington State to a degree sufficient to satisfy the purposeful availment requirement. The degree of interjection here favors the reasonableness of exercising jurisdiction. *See e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (finding that the purposeful injection factor weighed strongly in plaintiff's favor where defendant knew his actions would likely injure plaintiff in the forum state and communicated with plaintiff in the forum state). Being forced to defend this matter in Washington State is not unexpected.

Nor has defendant Bishop come forward with any evidence that he will be unable to defend the action from Florida. "[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *Menken*, 503 F.3d at 1062.

Regarding the third and fourth factors from *Dole Food Co.*, defendant Bishop does not contend that Washington's exercise of personal jurisdiction conflicts with Florida's sovereignty. And Washington has a strong interest in providing a forum for its residents who are injured by torts. *See Panavision*, 141 F.3d at 1323.

"In evaluating [the fifth *Dole Food Co.*] factor, we have looked primarily at where the witnesses and the evidence are likely to be located." *Menken*, 503 F.3d at 1060–61. As the Court is unable to say whether the bulk of the evidence is in Washington, California, or Florida, this factor is neutral.

Finally, regarding the sixth and seventh factors, plaintiff points out that it is most efficient

1 to consider the claims against Bishop in the same litigation as the claims against Samec.

2 Defendant Bishop also does not argue that Florida is a viable alternative forum.

3 Thus, the Court finds that most of the factors set forth in *Dole Food Co.* weigh in

4 plaintiff's favor, although some factors are neutral.  Defendant Bishop has accordingly failed to

5 make a compelling case that exercising personal jurisdiction over him in Washington State is

6 unreasonable.

7 Therefore, the Court should find that personal jurisdiction over defendant Bishop in

8 Washington State is appropriate and should deny Bishop's motion to dismiss.

## CONCLUSION

For the reasons set forth above, the Court recommends that defendant Bishop's motion to dismiss (Dkt. 61) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **October 30, 2020,** as noted in the caption.

Dated this 8th day of October, 2020.

J. Richard Creatura
United States Magistrate Judge